Counsel, you may proceed. Thank you, Judge. Your Honors, my name is Scott Simpson. May it please the Court, I'm here on behalf of the plaintiff appellant, Mr. Eshagh, and the putative class. Your Honors, I'd like to make three substantive points in my argument today. First, if Terminix's litigation conduct does not constitute waiver under controlling precedent, then nothing does. Stated differently, if losing isn't prejudice, then nothing is. Secondly, I would like to point out that the decision of the lower court sets a very dangerous precedent that this court should be mindful of. It tells parties seeking arbitration that there is no consequence in litigating a case on the merits in court to a final conclusion before arbitration. This kind of thinking is contrary to Supreme Court precedent, to the Federal Arbitration Act, to the rules of civil procedure, and the contract of the parties themselves. Third and finally, one of the issues on appeal is whether the district court erred in deciding whether or not the case could proceed as a class. As Your Honors will recall, the class claims were struck by the district court before the case was ordered to arbitration or in connection with it. There's been a lot of activity, frankly, in circuit courts and in federal district courts on the question of who decides, and it's not in the briefs. And I'd like to spend a little bit of time just alerting the panel to some of those controlling authorities, because this very well may be a question of first impression in the Ninth Circuit. And circuits such as the Tenth, the Third, the Sixth, and I think the First is about to decide it, are taking on this issue squarely right now. Counsel, on the waiver point, why doesn't Lake Communications control? Your Honor, Lake Communications is a 1984 Ninth Circuit case that has mixed claims of arbitration and non-arbitrable claims. The party who sought to arbitrate there gave notice early on of intent to arbitrate, and the motion to dismiss I think was on personal jurisdiction grounds. I don't even think it was a merits-based type motion. And Lake, Your Honor, I think falls in a classification of cases like Rush, the Second Circuit case, the Swetterbee case, and even the Fisher case of a different era when there was different things going on in relation to arbitration motions in court. Two things mainly. First, the Ninth Circuit prior to the Byrd decision adopted the intertwining doctrine, and the intertwining doctrine provided that if you had a mixed bag of arbitrable and non-arbitrable claims, and they were legally intertwined or factually intertwined, then the claims could remain in court. And, of course, the Byrd case, which is a U.S. Supreme Court decision at about that time, I think it was 1985 or 1986, held that that was wrongheaded thinking, that claims, mixed bags of claims, had to be dealt with separately even if it resulted in piecemeal litigation. I also would hasten to add that the cases cited by my colleague from this era also suffer from a different issue as well, and that is during the 1980s, antitrust cases, federal security cases, these cases were not arbitrable. At that time, the court had what I think was referred to as the Wilco line of thinking, which is certain federal statutory claims could not be arbitrated. And so the point is, is that when these securities cases and these antitrust cases were filed back in the 80s, the federal courts had a tough time of it. They had to decide what's arbitrable and what's not, and then what do I do with the non-arbitrable claims? And so you had a lot of litigation involving fights about that, and I think the courts correctly observed that if you do have a mixed bag, it's okay to ask for arbitration. It's also permissible to seek a dismissal on the merits of the non-arbitrable claims. So that's why I think those cases are different. Well, going back to Lake, Lake held, as I read it, that there was no waiver of the right to arbitration, notwithstanding that the defendant had not filed an answer, filed counterclaims, filed a motion to dismiss or engage in limited discovery, and did not seek arbitration for more than a year. Am I reading that case correctly? I think you're reading that case exactly correctly, but I think the difference that we have here is you have somebody who teed up the case on the merits in court. There were five State causes of action alleged in this complaint. Two of them no longer exist. Moreover, the class claims are gone. That's why I think this case is different, because there is no prejudice worse than losing. Now, with regard to the case of Lake, Lake, and Lake, I hear that, but that's every case. In other words, there's no appeal unless you lost. So that doesn't really answer the question. The question I have is the nature of the motion. Is it a statute of limitations motion? Yes. There was a claim. There was an argument for statute of limitations. There was economic loss doctrine. The statute of limitations issue under the controlling Supreme Court precedent of Howsam v. Dean Witter actually says that's a question for the arbitrator. So what the judge did is the judge said, I want to decide this. I don't care whether the arbitrator has the right to do it. And we lost on that basis. And I do think there's a distinction with a difference getting to your previous question. Filing a motion to dismiss is one thing. Causing a court to rule on a motion to dismiss or a 12C motion or a Rule 56 motion, I would submit, is a step too far. And would actually supply. Can I stop you right there? Just because we're in all these waiver cases, as you know, they're almost, they're factor cases, which I'm not crazy about all these various factors. But you look at each one. But if I hear you correctly, letting a motion dismiss go to decision always would amount to waiver. Is that, am I hearing you correctly? I think you're hearing me exactly right, Your Honor. And I think this case presents one of the rare opportunities. I don't like these multi-factor tests either. You know, lawyers look for bright lines so we can instruct our clients. We want to know where the line is and where stepping over the line becomes a problem. And I would submit to you, this is an easy case. If somebody moves for dispositive relief, whether it be 12B, 12C, Rule 56, whatever, and they tempt fate and they try to win, and whether they win or they don't win, that's the moment when they've indicated, in my judgment, the intent to litigate. There's no going back. So let me just take that a little bit further. I understand your point. But how do you square that with the precedent we have, which doesn't draw that single feature as the defining factor of waiver? I don't think this Court has confronted a case like this before. And that's why, early in our brief, we directed the Court's attention to the Hooper case from the Second Circuit and the Morant case from the Fifth Circuit. In Hooper, Hooper's really on all fours. It doesn't have the class aspect, which I think makes our case even stronger. But in Hooper, the defendant filed a motion to dismiss all claims. Two counts were dismissed with prejudice, just like in our case, and there was leave to amend, just like in our case. And four months later, the party urging arbitration then filed their motion. The Court found waiver under the same standard in the Eighth Circuit that you apply here in the Ninth, the Fisher test. And the Court remarked, the defendant wanted to see how things were going in federal court prior to deciding whether to arbitrate, playing a dangerous game of heads I win, tails you lose. The Court paid particular attention to the time and cost of repleting noted and basically said that they fully expected the defendant would raise the same dispositive motions in arbitration that they already had filed in court. And I hasten to... But that doesn't matter in Hooper that there was some limited discovery and they were in their basic negotiating litigation plan, which I don't think we have here. We don't have that here, and I think in cases that don't have a final decision on the merits, I think you're left with a multi-factor test and you're left with things like, you know, how long did you take? How much money did you cause the other side to incur? Did you do things inside of court that the arbitrators probably would not have allowed? Prime example here, there is no 12B6 practice in arbitration. There is no motion for more definite statement practice in arbitration. And so the problem here is that Terminix wanted to have its cake and eat it too. They wanted to take full advantage of being in litigation and then only use arbitration as a backstop. And as this Court knows, Burton v. Bush, other cases from around the country, the rule is clear that when you agree to arbitrate, you unagree to the rules of civil procedure. And let me point, Your Honors, to Rule 81. Rule 81 of the Federal Rules of Civil Procedure tells us when the civil procedure rules apply in connection with arbitration motions. And that rule and the cases interpreting that rule say that they apply in arbitration-related proceedings. Two examples. One would be if, for example, we were litigating whether there was an agreement to arbitrate or some defense to arbitration, and let's say we needed discovery. The agreement's missing, for example. The rules of civil procedure would allow that kind of discovery into that inquiry. Similarly, on the back end of the case, let's say the parties are back in court after an award is issued. They're fighting over vacater. They're fighting over confirmation. The Court would allow limited discovery to generate a record sufficient to look at the standards under 9 U.S.C. 10 for vacater. So those would be the instances. But they do not allow, and they do not countenance, the idea of permitting someone to litigate a case and then, when they don't win the whole case, to then arbitrate the case. And, in fact, this idea that you don't get two bites at the apple as a defendant goes all the way back to 1960. There's a United Steelworkers case cited in our papers. That was a labor law case. And in that case, the union sought to arbitrate, and the employer thought that the union's claims were frivolous. So it asked the federal district court to act as a prescreener, if you will, to look at the case and say, well, only send the good cases to arbitration. Go ahead and get rid of the other cases. And that's exactly what the court did. And the U.S. Supreme Court, on appeal, said a federal district court's job is not to weed out unmeritorious claims or to take up the merits prior to going to arbitration. Would we, if we adopted the position that you're suggesting, be creating a circuit split with the Second Circuit in the Rush case, which basically is a single motion to dismiss situation? Again, well, in Rush, there were intricate claims. There were claims that were dismissed that were not arbitrable. I don't think so. I think you can confine Rush, Lake, Sweaterby, those cases to the era when federal statutory claims were not arbitrable and the intertwining doctrine caused courts to have to look at these cases. But that's not part of Lake. I mean, Lake didn't rely on that. Well, Lake had antitrust claims, if I'm not mistaken. No, no. I mean, Lake didn't say all these claims are intertwined and, therefore, that's why the waiver doctrine was applied. Lake filed a motion to dismiss for lack of personal jurisdiction, and they said, well, it's not waived. Well, actually, I don't know that it's in the opinion. We're not quite free to say it's an old case and, therefore, it's no longer good law. Well, I think, Your Honor, the opinion does speak to the fact that there were antitrust claims. Right. And under Mitsubishi at that time, those claims were not arbitrable. And so I don't think Lake speaks as directly as some of the other cases do, like, for example, Fisher, where, you know, the Bird case happened in the middle of it and they didn't know they had the right to arbitrate until that sprung up. But, no, I don't think you're going to create a circuit split. In fact, I think, although Hooper doesn't offer the per se rule that I would advocate, I think your decision would be consistent with Hooper, and I think it would be consistent with the Fifth Circuit Morant case, where three motions to dismiss were filed, the third one was partially granted, and the court held that the defendant waived the right to arbitrate. I'd like to – well, I'm running out of time. Let me offer a couple of things before I sit down. Some new cases for the court to look at. Quillen v. Tenet Health Systems. Counsel, have these been submitted on a 28-J letter? They have not, Your Honor. Before leaving the courtroom, see the deputy clerk and provide those citations to opposing counsel and three copies for the bench. Yes, Your Honor. We'll do so. We prefer to hear these late-filed citations in a 28-J letter, which gives us a chance then to actually read the case. I don't have sufficient copies to hand out, but if Your Honor will entertain it, I will supply a letter to the court following argument today that will lay out these cases. Very well. I only have about 20 seconds left. I just wanted to say that this, again, this sets a dangerous precedent. This gives – this means the defendants have two chances to win, and a plaintiff resisting arbitration has to win twice. And this is going to change arbitration practice. This is going to tell defendants, look, you can litigate a case even to the merits, and if you lose, you can always arbitrate. Thank you. Thank you, counsel. Your time has expired. The response will be on behalf of Terminex. Counsel. Good morning. May it please the Court. Josh Vinson on behalf of the Terminex defendants. I kind of would like to pick up where counsel was talking about the intertwining doctrine in a different era. And I think one of the interesting things about those of us who have been practicing this long is things tend to repeat themselves. And one of the things that seems to have occurred, especially in this circuit and in this jurisdiction, is like the intertwining doctrine here, you had the Discover Bank Rule, very similar circumstances, unique to this jurisdiction. If you look closely at how the plaintiff drafted this complaint, and I'm talking specifically now about Record Excerpt pages 257 and 258, you'll see that they specifically alleged that this case involved an adhesion contract and that this case involved negative value with respect to the plaintiff's claim, which I assume is a euphemism in class action practice for a claim is too small to bring by itself. Those are the two factors that place a case like this squarely within the Discover Bank Rule. So it's obvious that what occurred here is the plaintiff very strategically drafted this complaint so that it would fall right within the Discover Bank Rule and make it impossible, if not futile, for the defendants to move to compel arbitration in this case. So I think one of the threshold questions you have in this case is did the Terminix defendants really have an existing right to seek to compel arbitration at the outset of this case? Because this suit was filed in February of 2011, which preceded the Concepcion decision, which didn't come down until April 27th of 2011. Our motion to dismiss was filed before Concepcion was decided. So we were confronted with a circumstance that really, you know, he wants to tell you to forget about these old – this old law and this old doctrine involving the intertwining doctrine, but really what you have here is almost history repeating itself in some ways. There's a very strong parallel between this case and the Fisher case, because just as in Fisher, where the Supreme Court in the Dean Witter case did away with the intertwining doctrine in the – actually, that case I think had gone on for almost two years in Fisher. In our case, it's not quite that long a period of time that our case was pending before Concepcion came down. But at the time we were present before the Court, we were confronted very much with the same circumstances that the defendant was confronted with in Fisher in terms of the futility of moving to compel, because I think almost any judge would take a look at that complaint and see that it was – it was teed up, to use counsel's phrase, to fall squarely within the Discover Bank rule. So the opportunity to do that, I think, right out of the chute was a problem for us, and that's one of the first considerations in the three-part test under the FAA that you use in addressing waiver. Now, in their reply brief, they raised the Gutierrez case. And in the Gutierrez case, the Court talked about that question because the Gutierrez defendant involved a similar problem, and the Court pointed out that there was, I think, three district court cases where defendants had successfully moved to compel arbitration pre-Concepcion. And so the Court questioned whether it was really futile in those circumstances. But if you drill down and you look at the three district court cases that were cited in this Court's Gutierrez decision, it does not, at least doesn't appear to those of us who read it, because we don't have, you know, access to the record at the time, it does not appear that those district court cases involved complaints that were deliberately pled to fall within the Discover Bank rule. They did not involve adhesion contracts. They did not involve this negative value. Now, if you look at the Fisher case, it's interesting, but in Fisher, if you look at footnote 2, I think it is, yes, footnote 2 of Fisher, the Court talks about how, despite the existence of the intertwining rule, just as this Court talked about in Gutierrez about those three district court cases, in Fisher the Court in footnote 2 talked about how there were some other circuits or some other cases where you could get arbitration despite an intertwining of securities law claims and common law fraud claims. So, again, you know, it's like history repeating itself. I think the Fisher case, it may well be dispositive on this issue of waiver because I don't think Terminix really, consistent with Fisher, had an existing right, and I think that to move to compel arbitration at the time. And I do think that the Gutierrez case, you know, is quite a bit different. Gutierrez, the defendants didn't seek arbitration until the case was on appeal. They had already lost the whole thing. So quite different in that regard. But one of the things that the Court did reject in Gutierrez, the argument that I'm making right now, was based on that possibility that preconcepcion, maybe you could still get a court to compel arbitration. I think this is a different circumstance here because of the way this complaint was framed, specifically to dodge the motion to compel arbitration and bring it squarely within the Discover Bank rule. So, pretty tough call there. I think, you know, brought up the question of the motion to dismiss and the basis of the motion to dismiss. If you read the district court's decision in this case, and I'm talking now specifically about record, the excerpt of record, pages 30 and 31 and 32 and 33, you know, that was a pretty surgical motion to dismiss. And we're talking about a statute of limitations defense that disposed of two counts. It was plain from the face of the complaint that this plaintiff discovered his injury in, I think it was February of 2008, and the two claims that were knocked out, a professional negligence claim and a claim for a sumsit, clearly barred by a two-year statute of limitations. That's a pretty surgical disposition, a pretty obvious disposition. The only other part that the district court addressed in response to the motion to dismiss was the pleading of fraud without sufficient particularity. And what I think what really, I don't want to say annoyed the judge, but I think was problematic is, you know, the judge said, look, you've attached 100 pages of exhibits to your complaint. Can you just amend your complaint to tell us what it is in those exhibits that helps make out your case? That was really the extent of the motion practice in this case. That's it. Those were the rulings that the judge made. You know, I don't want to skip over here to the third element of prejudice, but, you know, counsel talks about how there's nothing more prejudicial than a disposition on the merits that dismissal of those two counts on the statute of limitations grounds, but why hasn't he appealed it, if it was that prejudicial? I mean, this is not a 1292a1 appeal based on an order staying the litigation. They asked for a final disposition of dismissal of the entire case so that they could take this appeal. So if they were really, really genuinely prejudiced by the disposition of those two counts on statute of limitations grounds, why isn't that in their brief? Why aren't they arguing that it was wrong? Obviously, it was the disposition of two frivolous claims. That's what it was. So I don't really see that he's made out any case here whatsoever for prejudice at all on that score. The question was asked, I think, Judge McEwen, you asked this question about the multifactorial test and, you know, counsel wants a bright-line rule. You know, I certainly think, yeah, to some extent we all like bright-line rules, but when you talk about questions of waiver, I'm not sure that a bright-line rule is the most workable solution. I mean, his bright-line rule, as I understand it, is any motion to dismiss results in a waiver. Yeah. And, you know, there's an awful lot of cases around the country from all the different circuits, even the Hooper case that he's relying so heavily on, that point out that, you know, motions to dismiss, they say, are not homogenous. You know, they're all different. And even Hooper itself commented in that case that they weren't saying that any time you move to dismiss on an affirmative defense, that that's a waiver. They explicitly disclaimed that position in Hooper. So when you, you know, when you look at how the cases break, and I love the phrase that was used in the Gutierrez case, the mine run of waiver cases, I think, was the phrase that was used. And when you look at how, you know, where do these – where does the break – where does the break come? I think the break seems to come when you look at the cases on a national perspective once you get into discovery, really, or once you get into a summary judgment motion where you're, you know, you're really getting into the – to the factual dispute involved in the case. I mean, what is the point of arbitration? Arbitration is really, more than anything else, supposed to be a swift and efficient method of disposing of controversies. And where is it in our judicial system that we seem to get hung up the most, and maybe the reason why we have arbitration, is because of the time and delay and expense of discovery. I mean, to me, that seems to be – when you look at this circuit's cases, you know, you look at Van Ness, the more recent Kelly case that counsel did cite in the 28J letter, there was discovery in that case, went to a hearing on a preliminary injunction. The Gutierrez case had gone all the way through to appeal already. There's a full – I mean, there's a multimillion-dollar judgment on a class action. When you get to that point, yeah, at that point, I think you can say there's prejudice. The party, whoever's the nonmoving party, has certainly been deprived of the benefits of arbitration. When you're talking about situations like this where it's a motion to dismiss, that's why cases like Lake Communications, Sovak, the Richards v. Ernst & Young case that counsel cited in the recent 28J letter, the United Computers v. AT&T case, Bernanke, every one of those cases, the Court found no waiver and there was motion practice. Now, you can sit and split hairs over was it a motion over personal jurisdiction or something like that, or was it a motion on an affirmative defense. But I think what we're really talking about is did we really, you know, did we really usurp the purpose of arbitration? And again, I go back to the point that I think really the heart and soul of why arbitration seems to be preferable is because it's efficient when it comes to discovery. That's the one thing you know as a lawyer. Kennedy. If we are to split hairs in this case, your motion to dismiss was not akin to Lake Communications, where it's a personal jurisdiction defense that you have to raise right away. That's true. But it was a comprehensive motion as to everything in the case. There's no question about it. And again Why does that make a difference? Well, I think the difference that it makes is because of the environment we were in, because it was preconception. And because at that point in time, I don't think we knew that we had an existing right. I understand that. I'm just talking conceptually. If a defendant who has a knowledge of an arbitration right, and you say you didn't because of conception. Right. But assuming hypothetically that a defendant has a knowledge of an arbitration right and makes a substantive motion to dismiss, why isn't that trying to take a peek at the merits in an unfair way before making a motion to compel arbitration? Well, because I think, as this record demonstrates at pages 181 to 189, you can have motion practice in arbitration. Well, you can. So there's not really a You know, you made a strong merits-based motion to dismiss. It wasn't a frivolous motion. It was you were trying to get rid of the whole case. That's absolutely true, Judge. You know, I don't have a great answer for you. I mean, because the question that you're asking really in preparing for this oral argument is the one I struggled with most myself, is where do you try and draw the line here? Where does the balance shift between, you know, motion practice that rises to the level of substantial engagement of the litigation machinery and tips the balance in favor of waiver and one that doesn't? And the only conclusion that I could come to really is one that is, when you reach the point where you're much more fact-based, like a summary judgment motion, as opposed to one that I think is confined to the face of the pleadings. Because here we really didn't, you know, they complain in their brief that somehow we exposed all of these litigation strategies and theories by bringing this motion. And that's why I say I think you've got to read the district court's decision, because when you read the district court's decision, all the judge really told him to do was don't do this, you know, document dump with 100 pages of exhibits attached to your complaint and say it's fraud. Tell us what's in those documents that you relied on that made it fraud. That's really all the judge did. Let me ask you now, let's, we're post-Concepcion, okay? Yes. Same complaint gets filed, you represent Terminix, you now know what Concepcion says. In your view, are you required then to file a motion to compel arbitration, or can you file a motion to dismiss and delay your motion to compel arbitration? I think it's a, you know, it is the totality of the circumstances, is the way the tests run. I think that I would have a much more difficult argument if this was a post-Concepcion case. But I still think that when we get to the point of where does that line break between the point where you've reached waiver and you haven't, the fact that it's a motion to dismiss that's confined to the pleadings is not a significant engagement of the litigation process to the point where, I mean, because. And so what you're saying, if I hear you right, is that in your case, the one we have in front of us now, you don't need to, because you were in the pre-Concepcion posture, that it may be, it could be a one-off case or it could be a case in a strata Yes. And that we don't need to decide what would happen in the post-Concepcion area. Yes, I agree with you 100 percent on that. Refresh me. When was Concepcion decided? 2012? Concepcion came down April 27th, 2011. And our motion to dismiss was filed April 7th, 2011. Counsel, your time has just expired. Thank you very much. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, McKeown